[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 50, and the defendant husband, 51, married on October 29, 1966 at Allentown, Pennsylvania. Earlier that year the defendant had graduated from Lehigh and immediately joined IBM as an industrial engineer on June 6th at its Owego, New York location. The plaintiff, who had been a college student, left school to be married.
They purchased their first home while in the Binghamton, New York area which they sold after the defendant was transferred to Raleigh, North Carolina in 1970.
Two children were born to the parties, now 28 and 26. The plaintiff was able to obtain her degree in 1981 from North Carolina State. The plaintiff did not return to full time employment until both children were in college which was about five years ago. The plaintiff's present work involves promotions from shopping centers which she has been doing since January, 1993. Previously, the plaintiff had worked as an activities director for Courtney Gardens at an annual salary of $23,000.00; at a printing company for $33,000.00 annually and at a travel agency for $30,000.00 annually, as well as cleaning homes in the Greenwich area.
The parties built a home in Raleigh for $35,000.00 which they sold eighteen months later. After living in a townhouse for one year they purchased a house the plaintiff described as a "fix up" i.e. a house needing major renovation which work the defendant undertook lasting twelve years. Since the plaintiff had a CT Page 1031 demanding career requiring substantial travel, the plaintiff was left to contend with work in progress creating inconvenience and aggravation to her. These protracted periods of time during which basic needs were left unaddressed such as lack of central heat contributed to the breakdown of the marriage.
The plaintiff volunteered that she accepted 50% of the responsibility for the breakdown. In 1982 the defendant was transferred to White Plains, New York and a year later was given an executive position on the corporate manufacturing staff. From $80,000.00 annual salary in 1982 the defendant advanced to $120,000.00 in 1987 and $300,000.00 in 1991. Since 1983 the defendant has been classed as an executive. In October, 1993 he accepted a lateral promotion to the PC division located in North Carolina. IBM provided a rental home and a leased auto. The defendant described some difficulties his employer's PC division was having giving the defendant some concern for his future with the company. Fortunately, he will have 30 years of service as of June, 1996 which allows him the option of retiring with $93,000.00 pension income annually, which would be payable immediately upon retirement, (Plaintiff's Exhibit #5). The defendant also has a tax deferred savings plan (TDSP) that had as of June 30, 1995, a total value of $43,105.71 and an extended tax deferred savings plan which had as of June 30, 1995 a total value of $3,574.99, (Plaintiff's Exhibit #6).
The defendant has been granted stock options in January, 1993, April 1993 and in February, 1994 consisting of three types. The first type is awarded by management for the defendant's "continued ability to make significant long-term contributions" to IBM's success. The defendant received 904 in January 1993, 4,916 in April 1993 and 1,017 in February 1994 exercisable at $46.31, $47.88 and $53.44 respectively. The second type, granted to the defendant as incentive stock options (ISO), which qualify for capital gain tax treatment when exercised, 2,159 were granted on January 1993 and 864 on February, 1994 at $46.31 and $53.44 respectively. The third type, although called an option, is the right to receive a payment from IBM equal to the difference between the grant price and the market value of IBM stock on the date of exercise. The defendant received a grant of 2,698 at a grant price of $46.31. Since all the above awards are now fully vested, (cf. Defendant's Exhibits D E) the court will treat them as marital assets subject to division, Denley v. Denley, 38 Conn. App. 349.
The defendant has also been awarded options, ISOs and SARs, CT Page 1032 received by him on the same three dates, for an additional 12,438 combined shares at the same grant prices, which are not exercisable since the ISO's are exercisable in installments. (Defendant's Exhibit G).
Currently, the Defendant is a vice president of IBM earning $3,644.00 weekly gross and $2,636.00 weekly net after mandatory deductions. He is also receiving a bonus averaged to $667.00 weekly net and an IBM perk for $93.00 weekly. His annual salary is $190,000.00 with an anticipated bonus of $48,000.00 for 1995.
The court has reviewed the evidence in light of the statutory criteria found in § 46b-81 applicable to division of assets and in § 46b-82 applicable to determination of alimony. The orders being entered as part of the judgment are based on the parties' present circumstances existing at the time of trial. The following judgment is entered.
1. A decree is entered dissolving the parties' marriage on the ground of irretrievable breakdown, the allegations of the complaint having been proven with jurisdiction found based on the plaintiff's continuous residence as alleged in her complaint.
2. The real estate known as 22 Marks Road, Greenwich, Connecticut is ordered to be placed on the market and sold, upon price and terms to be agreed upon by the parties. After all expenses of sale are paid, 60% of the net proceeds shall be paid to the plaintiff and the remaining 40% shall be paid to the defendant after the following debts are satisfied from the proceeds:
 a) Citibank Mastercard b) J.C. Penney c) Citibank Visa d) IAG Credit Union signature loan e) IAG Credit Union stock loan.
Either party may move for clarification as to the details of listing and sale should any disagreements arise between the parties. Until sold, the defendant shall have exclusive possession of the premises and shall continue to pay the mortgage installments, taxes and insurance. Any adjustments in sellers' favor for payments made by defendant in advance shall be returned to him at the closing.
Any disagreement arising from the parties' division of the CT Page 1033 contents of the marital home shall be brought to court for further order.
3. The defendant shall pay periodic alimony to the plaintiff in the monthly sum of $5,500.00 until the death of either party, the plaintiff's remarriage, the defendant's retirement from IBM or further court order[1].
Upon plaintiff's retirement the periodic order will be reduced to $1.00 per year. The plaintiff will begin to receive 50% of the defendant's benefit rights in his retirement plan and in his tax deferred savings plan as valued as of January 1, 1996[2]. The court orders and awards the plaintiff 50% of the defendant's retirement or pension benefit and 50% of the defendant's tax deferred savings plan. Counsel for the defendant is directed to prepare the QDRO for approval by the plan administrator as to form after review by the plaintiff's counsel. Jurisdiction of these orders is retained until the QDRO ordered is completely in place. It is the court's intention to divide all of the defendant's retirement benefits, as of the date of judgment, equally between the parties. Krafick v.Krafick, 234 Conn. 783.
The division of the defendant's pension is in addition to any widow's pension to which the plaintiff is entitled and the defendant is ordered to maintain the plaintiff as the designated spouse to preserve the plaintiff's widow's pension.
4. The defendant's vested stock options totaling 12,558 shall be divided equally with the plaintiff having the right to 50% of said options as part of the division of assets and she may specify when 6,279 of the options, within their lifetime, may be exercised.
The defendant shall retain all unvested stock options as his sole property.
5. The defendant shall maintain the plaintiff as primary beneficiary of $200,000.00 of life insurance insuring his life until he retires from IBM. He shall provide the plaintiff with proof of coverage and proof of premium payments.
6. The defendant is awarded sole ownership of the 1986 Toyota LeVan, the 1989 Audi and the 19 ft. Rankin motorboat.
7. Each party shall retain all bank accounts presently bearing that party's name solely. Any joint accounts shall be CT Page 1034 divided equally.
8. The plaintiff shall retain her 10 shares of Omnimark, Inc. stock as her sole property.
9. The defendant shall retain the 49 shares of IBM stock listed on his financial affidavit as his sole property. The plaintiff shall execute any documents needed to effect this order.
10. The plaintiff shall be solely responsible for the Chase liability listed on her financial affidavit.
11. The defendant shall be solely responsible for the Discover Card liability of $3,826.00, the Coastal FCU-Visa liability of $4,070.00 and the Coastal Credit Union signature loan listed at $14,030.00.
12. The plaintiff shall be responsible for her own medical insurance at her sole expense, either via COBRA or otherwise.
13. No allowance to prosecute or to defend is ordered.
Counsel for the plaintiff is directed to draft the judgment file.
HARRIGAN, J.